UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JOSEPH A. LAROSKI, JR., JUDGE

| | |
|---|---|
| NATIONAL FISHERIES INSTITUTE, et al., Plaintiffs, v. UNITED STATES, et al., Defendants. | Case No. 1:25-cv-00223 |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY OR EXTENSION OF DEADLINE TO RESPOND TO PRELIMINARY INJUNCTION MOTION**

### I. INTRODUCTION

Plaintiffs National Fisheries Institute; Restaurant Law Center; Phillips Foods, Inc.; Heron Point Seafood, LLC; Newport International of Tierra Verde, Inc.; 3Fish, Inc.; Handy Seafood Inc.; Shaw's Southern Belle Frozen Foods, Inc.; Supreme Crab & Seafood, Inc.; Cebu Pacific LLC; Byrd International Inc., and Crustacea Seafood Company, Inc. (collectively, "Plaintiffs"), submit this response in opposition to Defendants' "Motion for a Stay or Extension of Deadline to Respond to Preliminary Injunction Motion," ECF No. 21 ("Defs.' Mot.").

In its motion, Defendants request a stay of the preliminary injunction response deadline— either 21 days after appropriations are restored, or until November 25, 2025. The request should be denied. The circumstances underlying Plaintiffs' motion are urgent and worsening: each day without action will force additional layoffs, contract cancellations, and lasting damage to Plaintiffs' businesses and the seafood supply chain. The Government already has all materials necessary to respond and needs no certified administrative record to do so. Its reliance on the shutdown and administrative convenience cannot justify postponing review in a case where the harm is

immediate and compounding. Plaintiffs respectfully request that the Court deny the motion and order expedited, emergency briefing and consideration of the preliminary injunction.

## II. ARGUMENT

As the Supreme Court has made clear, "the burden of making out the justice and wisdom . . . lay heavily on" the party seeking the stay. *Landis v. N. Am. Co.*, 299 U.S. 248, 256 (1936). The Court cautioned that "discretion [i]s abused if the stay [i]s not kept within the bounds of moderation," and courts must "weigh competing interests and maintain an even balance," setting "[b]enefit and hardship . . . off, the one against the other." *Id*. at 259; Defs.' Mot. at 2.

Here, that balance overwhelmingly favors denying Defendants' motion. On one side lies the Government's asserted inconvenience: its claimed difficulty in compiling an administrative record that is unnecessary for preliminary injunction briefing, arising from an appropriations lapse that has not stopped it from filing this very motion. On the other side stands the Plaintiffs' existential harms: immediate layoffs, collapsing supply chains, and the permanent loss of customers and business viability. These harms intensify daily as the January 1, 2026 effective date approaches. Even Defendants' "alternative" request—an extension to November 25, just five weeks before the ban takes effect—cannot be squared with the Supreme Court's demand for moderation or balance in *Landis*. The Government has not come close to meeting the "heavy burden" *Landis* places on a party seeking to halt proceedings where delay itself causes irreparable injury.

## I. The Balance of Interests Weighs Against Staying or Extending Defendants' Deadline

Defendants assert several rationales for delay, none of which withstand scrutiny. The motion should be denied outright and the Defendants ordered to comply with an expedited briefing schedule.

2

**A.  The Appropriations Lapse Does Not Justify Delay**

Defendants' reliance on the current funding lapse is misplaced. Defs.' Mot. at 4. Plaintiffs do not minimize the challenges posed by a shutdown, but those challenges do not suspend this Court's duty—or Defendants' obligation—to respond to an urgent motion for preliminary relief.

Courts routinely continue operations during appropriations lapses, particularly where, as here, delay would inflict ongoing harm. The judiciary's own guidance provides that the courts will "maintain limited operations necessary to perform [their] constitutional functions,"[1] and this Court's Rule 65(e) directs that motions for preliminary injunctive relief "will be given precedence over other matters . . . and expedited in every way." The Department of Justice is fully capable of responding during a shutdown using excepted personnel, as it has done in countless other matters in this Court during this shutdown and others.

Moreover, Defendants cite several cases to support their argument that a stay is appropriate under current conditions. *See* Defs.' Mot. at 3. But none of the cases Defendants cite support their position in this case, because none involved a pending (or contested) motion for preliminary injunction or comparable urgency. Thus, these decisions are irrelevant to the question before the Court and provide no justification for delaying Plaintiffs' preliminary injunction proceedings.

Defendants' request ignores the reality that this motion is one of exceptional urgency. Every day that briefing is delayed compounds harm to U.S. companies, workers, and markets. A stay on this basis would reward administrative inertia, contradict Rule 65(e)'s explicit command for expedition, and render the Court powerless in the face of an ongoing emergency.

---

[1] *See* Judiciary Funding Runs Out; Only Limited Operations to Continue, *available at* https://www.uscourts.gov/data-news/judiciary-news/2025/10/17/judiciary-funding-runs-out-only-limited-operations-continue.

### B. The Administrative Record Is Not Required to Respond to a Motion for Preliminary Injunction

Defendants' assertion that they cannot respond without completing the administrative record is both legally and practically baseless. Defs.' Mot. at 4. The Court is not conducting a merits review. It is being asked to preserve the status quo and prevent irreparable harm while the legality of the challenged decision is litigated. This is a common and straightforward motion practice that does not require the full record regardless of the fact that ultimately the case is one of APA review.

As the Supreme Court has emphasized, "given the haste that is often necessary" when confronted with a motion for preliminary injunction, such motions are "customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Requiring a full record compilation before briefing would defeat the very purpose of preliminary relief: to avert imminent injury, not to adjudicate the full merits.

In APA cases, courts assess "likelihood of success" based on the agency's decision memorandum, published rationale, and other readily available materials, while irreparable harm and public interest factors are evaluated through declarations and affidavits. Those latter showings necessarily fall outside the record. Nothing prevents Defendants from responding now using the Decision Memorandum and related country determinations already in their possession.[2]

---

[2] Moreover, the Court's own rules confirm that the administrative record is ordinarily filed after an action commences and on a timetable keyed to the Government's answer, not to emergency motion practice. In actions like this one, which proceed on review of an agency record but are not § 1581(c), USCIT Rule 73.3(a) requires the agency to file the record "simultaneously with the filing of an answer." And under USCIT Rule 12(a)(1)(A), the United States' answer is due 60 days after service. Together, these provisions underscore that record filing follows commencement and need not precede preliminary relief. Meanwhile, USCIT Rule 65 authorizes temporary restraining

Accepting Defendants' argument would make emergency relief effectively impossible in any APA case: an agency could evade review simply by withholding its record. That circular result would convert a mechanism designed to preserve judicial review into one that insulates unlawful action from scrutiny. This Court's equitable authority exists precisely to prevent that outcome.

And even if some reference to record materials were useful, the agency already has them. The decision at issue was finalized on September 2, 2025, accompanied by detailed memoranda. Those documents are discrete, public, and immediately available. The Department of Justice litigators routinely oppose preliminary injunctions in administrative and regulatory cases without waiting for a certified record. To the extent the Government wishes to rely on internal documents, it can file a short, targeted appendix of the specific pages it cites. That approach imposes minimal burden while avoiding devastating prejudice to Plaintiffs.

**C.  The Government's "No Additional Prejudice" Argument is Indefensible**

Defendants' claim that delay is harmless because Plaintiffs have "already suffered harm" is indefensible. Defs.' Mot. at 4-5. The fact that the injury has begun only amplifies the urgency of immediate judicial intervention. The harm is not static—it is accelerating.

As detailed in Plaintiffs' motion and supporting declarations, each passing day deepens layoffs, contract cancellations, and lasting damage to Plaintiffs' businesses and the seafood supply chain. The suggestion that early losses somehow diminish the need for relief is perverse. That Plaintiffs may be forced to terminate ten workers this week does not make it acceptable to terminate fifty more next week. Every day of delay deepens the harm, pushing otherwise viable businesses toward permanent closure before the Court can act.

---

orders and preliminary injunctions without any stated record-filing prerequisite and expressly provides that such motions "will be given precedence … and expedited in every way."

Defendants' proposed deadline of November 25—barely five weeks before the ban takes effect—would guarantee this outcome. It would not "preserve" the status quo; ***it would extinguish it***. Plaintiffs cannot simply "wait out" their destruction while the agency compiles paperwork it already controls. The Court's equitable power exists to prevent precisely that scenario.

### D. Plaintiffs Did Not Delay—They Acted with Extraordinary Speed in an Exceptionally Complex Case

Defendants' argument that Plaintiffs took their time before filing is equally meritless. *See* Defs.' Mot. at 4-5. Plaintiffs acted with diligence to gather the evidence necessary to seek emergency relief before irreparable harm occurred. They were required to assess 240 fishery denials across 46 nations, consult with dozens of affected companies throughout the supply chain, and document harm through extensive investigation and sworn declarations. The time needed to complete that work reflects the scope and complexity of this case—not any lack of urgency. Plaintiffs' thorough preparation underscores the seriousness of the harm and only heightens the need for prompt judicial action.

Nor does the fact that the ban becomes effective January 1, 2026, mitigate harm. As the declarations explain, the eight-to-ten-week shipping cycle means that business decisions made today determine which inventory will arrive after the ban's effective date. A November 25 response deadline leaves companies paralyzed during the most critical shipping period of the year. Every week of inaction means additional layoffs, terminated supplier contracts, and the permanent loss of customer relationships. Even the "shorter" of the two delays Defendants propose guarantees irreparable harm.

### E. The Government's Requested "Temporary" Relief is Effectively Indefinite

Defendants' portrayal of their request as "temporary" or "limited" is misleading. Defs.' Mot. at 6-7. The motion seeks a stay "until appropriations are restored," plus an additional 21 days

6

thereafter. No one can predict when that will occur. That open-ended request is, in practical effect, an indefinite stay. Even Defendants' alternative request—to push their deadline to November 25—would gut the urgency of Plaintiffs' motion and render any eventual ruling meaningless. The lapse in funding may affect agency operations, but it cannot justify postponing relief where Plaintiffs face escalating, irreparable harm.

II.     **Plaintiffs Face Immediate and Escalating Irreparable Harm That Precludes Any Stay**

The circumstances underlying Plaintiffs' motion for preliminary injunction are not merely urgent—***they are existential***. As detailed in the motion and attached declarations, the challenged import prohibitions taking effect on January 1, 2026, will eliminate approximately 89% of the blue swimming crab supply to the U.S. market. *E.g.*, Weir Decl. (Heron Point) at ¶ 41 (Ex. H). With no viable domestic or alternative international substitute, Plaintiffs face permanent destruction of their businesses, the loss of customer relationships built over decades, and the collapse of ongoing conservation programs. *See* Pls.' Mot. at 33-36.

The harm is not theoretical—it is active and accelerating. Processed crab shipped from Southeast Asia takes eight to ten weeks to reach U.S. ports. Turkin Decl. (Supreme) at ¶¶ 16-17 (Ex. I); Weir Decl. (Heron Point) at ¶ 24 (Ex. H). Product leaving docks this week will arrive after January 1, 2026, and be refused entry. *Id.* To avoid stranded inventory worth millions of dollars, Plaintiffs must curtail operations immediately—triggering layoffs, facility closures, and potential contract breaches. Phillips Decl. (Phillips Seafood) at ¶ 21 (Ex. G). Only an order from this Court can prevent such damage.

There is no countervailing public interest in delaying judicial review of agency action that is likely unlawful. *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)

("There is generally no public interest in the perpetuation of unlawful agency action."). And tellingly, the Government does not even attempt to identify one.

Each day of delay—whether to November 25 or indefinitely—means more jobs lost, more contracts breached, and more supply chain relationships permanently severed. ***These harms cannot be undone.*** Even if Plaintiffs ultimately prevail on the merits, a stay of Defendants' response deadline would ensure that the challenged prohibitions have already destroyed their businesses before any relief can be granted. Where, as here, the January 1, 2026, effective date is itself the source of irreparable injury, any delay in adjudicating Plaintiffs' motion directly advances that injury.

### III.    CONCLUSION

Defendants' motion should be denied in its entirety. They have not shown good cause to justify delaying their response to Plaintiffs' motion for preliminary injunction. The legal and factual materials necessary to brief the motion are already before the Court; no certified record is needed to proceed.

Plaintiffs respectfully request that the Court deny Defendants' motion to stay or extend, and set an expedited briefing schedule immediately so that Plaintiffs' motion for preliminary injunction can be heard and decided before further irreparable harm occurs.

Dated: October 20, 2025

Respectfully submitted,

/s/ Ashley Akers
_____
Ashley Akers
Rafe Petersen (Pro Hac Vice)
Andrew McAllister
Kamran Mohiuddin (Pro Hac Vice)
Maggie Pahl (Pro Hac Vice)
HOLLAND & KNIGHT LLP
800 17th Street N.W., Suite 1100

8

>Washington, D.C. 20006
>Tele: 202-441-5870
>Ashley.Akers@hklaw.com
>Rafe.Petersen@hklaw.com
>Andrew.Mcallister@hklaw.com
>Kamran.Mohiuddin@hklaw.com
>Maggie.Pahl@hklaw.com
>
>*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Ashley Akers, one of the attorneys for Plaintiffs, certify that the foregoing document was filed electronically with the Court's Case Management/Electronic Case Filing (CM/ECF) system on October 20, 2025. The Court and/or Clerk of the Court may serve and give notice to counsel by CM/ECF electronic transmission.

/s/ Ashley Akers
Ashley Akers

*Attorney for Plaintiffs*
