UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:    THE HONORABLE JOSEPH A. LAROSKI, JR., JUDGE

| | |
|---|---|
| NATIONAL FISHERIES INSTITUTE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES, et al.,<br><br>Defendants. | Case No. 1:25-cv-00223 |

**PLAINTIFFS' EMERGENCY MOTION TO EXPEDITE<br>CONSIDERATION OF PRELIMINARY INJUNCTION**

Pursuant to Rules 65 and 3(g) of the U.S. Court of International Trade, Plaintiffs respectfully move the Court for expedited consideration and prompt ruling on their Motion for Preliminary Injunction, ECF No. 17. The harm that Plaintiffs sought to prevent is no longer a looming threat—it is occurring now. Prompt judicial action is essential to alleviate the continuing and compounding harm Plaintiffs are suffering each day the challenged determinations remain in effect.[1]

---

[1] Plaintiffs recognize that the federal government is presently shut down and appreciate the difficult position this places government counsel in responding to the motions pending in this matter. Plaintiffs have the utmost respect for the attorneys who continue to navigate these extraordinary circumstances. Nevertheless, the nature of this emergency compels Plaintiffs to seek immediate relief despite those challenges. The harm confronting Plaintiffs is not pausing during the shutdown, and each day of delay renders more of that harm irreversible. By the time the government reopens and normal litigation schedules resume, there may be nothing left for this Court to preserve.

## I. Legal Background

Under Rule 3(g)(5), the Court may expedite any "action that the court determines, based on motion and for good cause shown, warrants expedited treatment." This Court has held that "good cause" exists to expedite the briefing and consideration of an action: (1) in a case in which failure to expedite would result in mootness or deprive the relief requested of much of its value, (2) in a case in which failure to expedite would result in extraordinary hardship to a litigant, or (3) actions where the public interest in enforcement of the statute is particularly strong. *See J.D. Irving, Ltd. v. United States*, 570 F. Supp. 3d 1349, 1353 (Ct. Int'l Trade 2022) (quoting *Ontario Forest Indus. Ass'n v. United States*, 444 F. Supp. 2d 1309, 1319 (Ct. Int'l Trade 2006)); *see also* USCIT Rule 65 (motions for preliminary injunctions must "be given precedence . . . and expedited in every way").

## II. Good Cause Exists to Expedite This Motion

Good cause exists for expedited consideration under Rules 3(g)(5) and 65 of the Rules of the U.S. Court of International Trade. Rule 3(g)(5) authorizes the Court to expedite proceedings "for good cause shown," and Rule 65 mandates that motions for preliminary injunctions "be given precedence over all other matters and expedited in every way." Together, these provisions give the Court both the authority and the responsibility to act swiftly when delay would defeat the purpose of the relief sought.

Here, good cause is not merely present—it is overwhelming. As detailed in Plaintiffs' Motion for Preliminary Injunction and supporting declarations, ECF No. 17, the harm that was once imminent is now occurring daily. Each passing day deepens the injury and narrows the possibility of meaningful judicial relief. Plaintiffs are beginning to shut down operations; workers are being laid off; and supply chains and commercial relationships built over decades are

disintegrating in real time. Other companies are now following suit. What was once a looming threat has become an unfolding crisis.

Expedited consideration is therefore both warranted and essential. The very purpose of Rule 65's command—to give injunction motions precedence and expedite them "in every way"—is to ensure that the Court's eventual decision retains practical effect. Unless the Court acts promptly, irreparable harm will continue to compound and the relief ultimately granted may come too late to matter. Plaintiffs respectfully urge the Court to exercise its discretion to expedite this motion and prevent further, irreversible harm.

### A. Failure to Expedite Will Moot Plaintiffs' Remedies and Deprive the Relief Requested of its Value

Failure to expedite this matter will effectively moot Plaintiffs' remedies and strip the requested relief of its practical value. As set forth in Plaintiffs' Motion for Preliminary Injunction, the import prohibitions at issue will take effect on January 1, 2026—but the consequences are already unfolding. The seafood supply chain operates on an eight-to-ten-week transit cycle. It takes roughly that long to ship processed crab from Southeast Asia to the United States. In other words, crab departing the docks this week will arrive after January 1, 2026, and will be barred from entry. The commercial decisions determining whether those shipments occur must therefore be made now, not months from now.

Once these operations close, restarting them will be extraordinarily difficult—if not impossible. The shutdowns will cause a permanent loss of skilled workers and processing infrastructure; a collapse of credit and financing; breaches of contracts and business relationships; destruction of goodwill and reputation; and cascading economic, environmental, and conservation harms—all of which are documented in the Motion for Preliminary Injunction, ECF No. 17 at 33–

37. These are not theoretical risks; they are occurring now, and they compound with each day of inaction.

If the Court does not act swiftly, the government's unlawful determinations will inflict irreversible damage before judicial review can occur. The purpose of preliminary relief is to preserve the status quo so that a victory on the merits remains meaningful. Delay here would do the opposite—leaving Plaintiffs with a hollow judgment after their businesses, workforces, and supply chains have already collapsed. Immediate expedition is therefore essential to ensure that justice, if ultimately granted, still matters.

### B. Failure to Expedite Will Result in Extraordinary Hardship to all Plaintiffs

If the Court does not act quickly, Plaintiffs will suffer extraordinary hardship—financially, operationally, and irreparably. The damage already totals hundreds of millions of dollars, but the greater loss is structural: the collapse of an entire supply chain, the termination of contracts, the destruction of production capacity, and the unraveling of relationships built over decades. Each day of delay compounds the harm and pushes Plaintiffs closer to irreversible loss.

When Plaintiffs filed their Motion for Preliminary Injunction, they warned that irreparable harm would begin in mid-October. That time has come. The harm is no longer prospective—it is occurring now. For example, Phillips Foods—a century-old company and one of the Plaintiffs in this case—has already begun shutting down operations. *See* B. Phillips (Phillips Foods) Suppl. Decl. at ¶ 3 (hereinafter "Phillips Foods Suppl. Decl.") (**Exhibit A**). The company has halted all exports to the United States from its Indonesian and Vietnamese facilities. *Id.* ¶ 5. The last containers have been produced, and harvests intended for U.S. customers have been stopped entirely. *Id.* ¶ 6. Phillips Foods took these actions because, absent prompt judicial relief, it cannot risk containers arriving after January 1, 2026, and being turned away at the border. *Id.* ¶ 4.

The scale of these shutdowns is devastating. In Vietnam, 91.9 percent of production has ceased; in Indonesia, 87.7 percent. Together, 88.9 percent of total output is being eliminated. *Id.* ¶¶ 8, 13–15. As Mr. Phillips states, "We cannot operate with nearly 90 percent of our business going away." *Id.* ¶ 10. On October 21, 2025, Phillips Foods' President in Asia notified all co-packers that the company is "finishing existing orders, but no new production will be started," and faces an "inevitable shutdown until the injunction is in place." *Id.* ¶ 11. Without immediate relief, those shutdowns will continue and deepen. *Id.* ¶ 12.

These closures have set Phillips Foods on an irreversible path toward permanent shutdown. Once existing inventory is exhausted by January 2026, the company will begin U.S. layoffs, retaining only a skeleton staff to wind down operations. *See id.* ¶¶ 15–16. It intends to sell its Asian facilities and "likely exit the business entirely." *Id.* ¶¶ 18–19. As Mr. Phillips explains, "I cannot handle a shutdown regardless of what people want to believe." *Id.* ¶ 20. His family is now "watching [the 100-year-old business] collapse in real time." *Id.* ¶ 21.

Every day without relief makes the harm more permanent. Workers are being laid off. Supply chains built over decades are disintegrating. Capital investments are being liquidated. Displaced workers are finding new employment. Customers are reformulating menus. Equipment is being sold. Facilities are closing for good.

The window to preserve the status quo is closing rapidly. Phillips Foods represents only one plaintiff, but its 88.9 percent production reduction mirrors the collapse unfolding across the industry. The challenged comparability determinations affect 240 fisheries in 46 countries, impacting $3.89 billion in annual imports and thousands of jobs. *See* Compl. ¶¶ 87–88 (ECF No. 2). Without immediate judicial intervention, this entire segment of the global seafood industry faces extinction.

**C. The Public Interest Strongly Favors Expedited Judicial Review**

Good cause also exists because the public interest overwhelmingly supports prompt judicial review of likely unlawful agency action and the preservation of vital supply chains while that review occurs. *See, e.g.*, *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) ("There is generally no public interest in the perpetuation of unlawful agency action."). Expedited consideration directly serves that interest here.

First, the challenged determinations—if left unreviewed until after the January 1, 2026 effective date—will eliminate roughly 89 percent of the U.S. blue swimming crab supply, sever longstanding commercial relationships, and strand millions of dollars in in-transit inventory. The resulting market shock would ripple through restaurants, retailers, and consumers nationwide. Avoiding unnecessary economic disruption and preserving access to a sustainable source of protein while the Court assesses Plaintiffs' legal claims is manifestly in the public interest.

Second, expedited review safeguards American workers and communities. Plaintiffs have already described the layoffs, facility closures, and economic dislocation now underway as importers curtail production to avoid post-deadline refusals. The continuation of these shutdowns will not only destroy private businesses but also devastate coastal workforces and local economies that depend on this industry. Prompt judicial action can mitigate those losses before they become permanent.

Third, expedition advances both conservation and regulatory integrity. Plaintiffs' declarations detail industry-funded sustainability programs and fisheries-management initiatives that will be defunded if operations collapse. *See* Picard Decl. ¶¶ 37–39. These initiatives were established in coordination with international conservation authorities and are critical to ensuring

lawful, traceable sourcing. A timely ruling ensures that if Plaintiffs' merits arguments prevail, these environmental and compliance gains are not needlessly sacrificed to bureaucratic delay.

## III. Conclusion

The emergency is no longer approaching—it is here. Workers are being laid off today. Supply chains are being severed today. Each day without relief compounds the harm and brings it closer to permanence.

Plaintiffs respectfully request that the Court:

1. Expedite the briefing schedule;

2. Hold an emergency hearing at the earliest practicable date; and

3. Issue a prompt ruling on the pending motion for preliminary injunction.

The legal issues warrant careful consideration, but they also demand swift action. The purpose of preliminary relief is to preserve rights before they are lost. Without immediate judicial intervention, there soon will be nothing left for this Court to protect.

Dated: October 22, 2025

Respectfully submitted,

_____
Ashley Akers
Rafe Petersen (Pro Hac Vice)
Andrew McAllister
Kamran Mohiuddin (Pro Hac Vice)
Maggie Pahl (Pro Hac Vice)
HOLLAND & KNIGHT LLP
800 17th Street N.W., Suite 1100
Washington, D.C. 20006
Tele: 202-441-5870
Ashley.Akers@hklaw.com
Rafe.Petersen@hklaw.com
Andrew.Mcallister@hklaw.com
Kamran.Mohiuddin@hklaw.com
Maggie.Pahl@hklaw.com

*Attorneys for Plaintiffs*

# Exhibit A

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:     THE HONORABLE JOSEPH A. LAROSKI, JR., JUDGE

| | |
|---|---|
| NATIONAL FISHERIES INSTITUTE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES, et al., <br><br> Defendants. | Case No. 1:25-cv-00223 |

## SUPPLEMENTAL DECLARATION OF BRICE PHILLIPS IN SUPPORT OF MOTION TO EXPEDITE PRELIMINARY INJUNCTION

I, Brice Phillips, pursuant to 28 U.S.C. § 1746, declare as follows:

1. My name is Brice Phillips. I am the Vice President of Business Development and Sustainability for Phillips Foods, Inc. ("Phillips Foods"). I previously submitted a declaration in this matter on October 14, 2025.

2. I submit this supplemental declaration to inform the Court that the catastrophic harm I described in my prior declaration is no longer a future threat—it is happening right now, today.

**Shutdowns Are Occurring Now—These are No Longer Future Projections**

3. Shutdowns are in the midst of being implemented **right now**. These are not estimations. This is not an "exercise." We are not "waiting to deploy these plans." We are actively engaged in reducing production quantities **today**.

4. We have taken emergency actions because we have no relief from the January 1, 2026, import bans, and we cannot risk having containers arrive after that deadline.

1

5. We are in the process of winding down our final exports out of Indonesia and Vietnam.

6. The last containers destined for the United States have already been produced. No new production for US customers will be started.

**Magnitude of Production Shutdowns**

7. I asked Dean Flowers, our President, to calculate what our operations look like when we shutter our five facilities in countries with current U.S.-import bans, with only non-U.S. customer business remaining on the production schedule.

8. The results are devastating:

    Vietnam: 91.9% of our production goes away

    Indonesia: 87.7% of our production goes away

    *Combined total: 88.9% of our <u>entire</u> production goes away*

9. The only thing remaining will be non-U.S. business, which accounts for a paltry 11.1% of our total production.

10. A reduction in sales of this magnitude means total shutdown of factories. We cannot operate with nearly 90% of our business going away.

**Notice to Co-Packers of Shutdowns**

11. On or about October 21, 2025, Phillips Foods' President in Asia, messaged to all of our co-packers: "We're writing to inform you that due to the ongoing NOAA ban, we're facing an inevitable shutdown . . . We're working closely to resolve this matter . . . We're finishing existing orders, but no new production will be started. . . . If there are no changes to the current situation, we will . . . shut down production."

12. This message reflects the reality of our situation: without immediate relief from this Court, our facilities are shutting down.

2

**Detailed Production Impact Data**

13.    Below is a chart showing the breakdown of production for United States sales versus third-party sales globally for year-to-date September 2024.

**Year to Date September 2024**

| Indonesia | US production pounds | US Production % | External Customers Production Pounds | External Customers Production % | Total Pounds | Total % |
|---|---|---|---|---|---|---|
| Crab | 1,794,877 | 79.5% | 461,471 | 20.5% | 2,256,348 | 100.0% |
| Crab Value Added | 1,645,135 | 98.9% | 18,784 | 1.1% | 1,663,919 | 100.0% |
| Total | 3,440,012 | 87.7% | 480,255 | 12.3% | 3,920,267 | 100.0% |

| Vietnam | US production pounds | US Production % | External Customers Production Pounds | External Customers Production % | Total Pounds | Total % |
|---|---|---|---|---|---|---|
| Crab | 184,820 | 65.1% | 99,148 | 34.9% | 283,967 | 100.0% |
| Crab Value Added | 1,183,066 | 98.2% | 21,463 | 1.8% | 1,204,528 | 100.0% |
| Total | 1,367,885 | 91.9% | 120,610 | 8.1% | 1,488,496 | 100.0% |

| Total | US production pounds | US Production % | External Customers Production Pounds | External Customers Production % | Total Pounds | Total % |
|---|---|---|---|---|---|---|
| Crab | 1,979,697 | 77.9% | 560,619 | 22.1% | 2,540,315 | 100.0% |
| Crab Value Added | 2,828,200 | 98.6% | 40,247 | 1.4% | 2,868,447 | 100.0% |
| Total | 4,807,897 | 88.9% | 600,865 | 11.1% | 5,408,762 | 100.0% |

14.    The chart shows that we will have to stop production for U.S. customers, resulting in an 88.9% reduction in total production across our Indonesia and Vietnam operations.

**The Path to Business Extinction**

15.    Once our inventory has been depleted here in the United States—which will likely occur by January 2026 as everyone scrambles to get as much crab as they can before the shutdowns—we will begin a major reduction in force here in the U.S.

16.    We will keep only a few critical personnel to help us continue to sell certain items. That is all we can afford to sustain.

17. We will likely keep that going in a limited capacity until a skeleton staff in our Asian headquarters in Bangkok sells off all of our facilities in Indonesia and Vietnam.

18. After we sell those facilities, we will likely exit the business entirely.

**Cannot Handle Shutdown**

19. To be clear: Regardless of the size of our operations, I cannot handle a shutdown regardless of what people want to believe.

20. Phillips Foods is a family business that has operated for over 100 years. We are watching it collapse in real-time due to import prohibitions that are based on agency errors.

21. Every day that passes without relief from this Court causes more irreversible damage. We need emergency relief immediately to preserve what remains of our business.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 22, 2025.

Brice Phillips
Vice President of Business Development and Sustainability
Phillips Foods, Inc.