**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| NATIONAL FISHERIES INSTITUTE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES, et al., <br><br> Defendants. | Case No. 1:25-cv-00223-JAL |

**PROPOSED ORDER**

Upon consideration of the Center for Biological Diversity, Natural Resources Defense Council, and American Welfare Institute's motion to intervene as intervenor-defendants, and upon consideration of all other papers and proceedings including Plaintiff's response in opposition, it is hereby,

ORDERED that applicant Intervenor-Defendants' motion is DENIED.

SO ORDERED.


Dated: _____                      _____
New York, New York                                                JUDGE JOSEPH A. LAROSKI, JR.

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:   THE HONORABLE JOSEPH A. LAROSKI, JR., JUDGE

| | |
|---|---|
| NATIONAL FISHERIES INSTITUTE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES, et al.,<br><br>Defendants. | Case No. 1:25-cv-00223-JAL |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO CENTER FOR BIOLOGICAL DIVERSITY, NATURAL RESOURCES DEFENSE COUNCIL, AND ANIMAL WELFARE INSTITUTE'S MOTION TO INTERVENE**

**I.   INTRODUCTION**

Plaintiffs National Fisheries Institute; Restaurant Law Center; Phillips Foods, Inc.; Heron Point Seafood, LLC; Newport International of Tierra Verde, Inc.; 3Fish, Inc.; Handy Seafood Inc.; Shaw's Southern Belle Frozen Foods, Inc.; Supreme Crab & Seafood, Inc.; Cebu Pacific LLC; Byrd International Inc., and Crustacea Seafood Company, Inc. (collectively, "Plaintiffs"), submit this response in opposition to Center for Biological Diversity, Natural Resources Defense Council, and Animal Welfare Institute's (collectively, "Proposed Intervenors")'s Motion to Intervene, ECF No. 25 ("Mot. to Intervene").

On October 14, 2025, Plaintiffs filed a Motion for Preliminary Injunction (ECF No. 17), demonstrating immediate, irreparable harm is already occurring as a result of the challenged agency determination. Defendants subsequently filed a Motion to Stay (ECF No. 21), which Plaintiffs opposed (ECF No. 22), and Plaintiffs then filed a Motion to Expedite (ECF No. 23). On

October 23, 2025, this Court correctly denied Defendants' Motion to Stay (ECF No. 24), acknowledging the urgent circumstances presented—namely, that ocean transit from Southeast Asia takes eight to ten weeks, requiring Plaintiffs to make irreversible operational decisions immediately to avoid stranded inventory arriving after January 1, 2026, when the import bans take effect. Since that time, the harm has intensified: Plaintiffs will have to begin domestic layoffs soon and face imminent plant shutdowns, contract breaches, and permanent loss of supply chains and customer relationships that cannot be restored even if Plaintiffs ultimately prevail.

Proposed Intervenors seek to intervene based on three asserted interests: (1) their members' alleged aesthetic, recreational, and scientific interests in marine mammals incidentally caught in the affected Southeast Asian fisheries; (2) their organizational and purported contractual interest in defending the implementation of import bans under their settlement agreement in *NRDC v. Raimondo*, No. 1:24-cv-00148 (Ct. Int'l Trade); and (3) their interest to preserve a litigation foothold for future challenges to positive comparability findings in unrelated fisheries. In essence, Proposed Intervenors seek to reassert the objectives of their separate settlement, advance their broader policy agenda, and position themselves for future lawsuits beyond the scope of this case— all at the cost of delay to parties suffering immediate and compounding harm from an immovable statutory deadline.

Their motion should be denied.

Intervention as of right under United States Court of International Trade ("USCIT") Rule 24(a) is unavailable because Proposed Intervenors' asserted interests are speculative, indirect, and adequately represented by existing defendants, who share the same objective of defending the challenged determinations. Permissive intervention under USCIT Rule 24(b) should also be denied

because intervention would unduly delay resolution of Plaintiffs' pending motion for preliminary injunction and prejudice Plaintiffs' ability to obtain timely relief.

The urgency of this matter cannot be overstated. Plaintiffs face ongoing, irreparable harm that intensifies daily. The Court's immediate attention must remain focused on resolving the pending preliminary injunction motion—not on collateral disputes that would complicate and delay this already time-sensitive proceeding.

## II.  STANDARD OF REVIEW

Intervention as of right is governed by USCIT Rule 24(a). In determining whether such intervention is appropriate, the Court considers four factors: (1) whether the proposed intervenor has demonstrated an "interest in the subject matter of the primary litigation," (2) whether the disposition of the action may impair or impede the proposed intervenor's ability to protect that interest, (3) whether the proposed intervenor's interests are "adequately represented by the existing parties to the suit," and (4) whether the motion is timely filed. *Dixon Ticonderoga Co. v. U.S. Cust. & Border Protec.*, 391 F. Supp. 2d 1294, 1296 (Ct. Int'l Trade 2005). The burden rests squarely on the movant to demonstrate each element of entitlement to intervention. Failure to satisfy any one factor is fatal. *See South Carolina v. North Carolina*, 558 U.S. 256, 276 (2010) (denying intervention where the existing governmental party adequately represented the movant's interest).

Permissive intention is governed by USCIT Rule 24(b) and 28 U.S.C. § 2631(j), and the Court's decision is a matter of discretion. In cases brought under 28 U.S.C. § 1581(i), permissive intervention "is left to the sound discretion of the court." *Neo Solar Power Corp. v. United States*, No., 16-000888, 2016 WL 3390237, at *2 (Ct. Int'l Trade June 17, 2016). When evaluating permissive intervention, the Court weighs whether the motion is timely filed, whether there are

common questions of law or fact, and whether intervention would unduly delay or prejudice the adjudication of the original parties' rights. *Id.*; *see also* USCIT Rule 24(b).

### III. ARGUMENT

#### A. Proposed Intervenors Do Not Meet The Standard For Intervention As Of Right

Intervention as of right is governed by USCIT Rule 24(a)(2), which provides that the Court must permit intervention for a party: (1) that "claims an interest relating to the property or transaction that is the subject of the action," (2) that "is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest," and (3) whose interests are not "adequately represent[ed]" by existing parties.

Proposed Intervenors fail to satisfy these requirements.

##### i. Proposed Intervenors' Asserted Interests Are Not Germane to the Subject of this Action

Proposed Intervenors seek intervention based on: (1) aesthetic, recreational, and scientific interests in marine mammals, Mot. to Intervene at 16; (2) a purported contractual and organizational interest in defending the implementation of import bans, *id*. at 17-18; and (3) a claimed interest in preserving their ability to challenge certain positive comparability findings in future litigation, *id*. at 18.

None of these asserted interests are germane to the subject matter of this litigation. Plaintiffs' claims challenge the legality of NMFS's regulatory framework, statutory interpretation, and analytical methodology in implementing the Marine Mammal Protection Act's ("MMPA") import provisions, 16 U.S.C. § 1371(a)(2), and its implementing regulation at 50 C.F.R. § 216.24(h). The questions before the Court concern whether NMFS exceeded its statutory authority, misinterpreted its regulations, acted arbitrarily and capriciously, failed to consider reliance interests, or effectively amended regulatory provisions without required procedures.

5

Proposed Intervenors' asserted interests, by contrast, concern collateral matters: generalized marine mammal conservation policy preferences, enforcement of a separate settlement agreement in *NRDC v. Raimondo*, and speculative plans for future litigation involving other fisheries and different factual records. Their motion improperly attempts to convert a focused administrative challenge into a broader platform for policy advocacy and settlement enforcement.

a. <u>The *Raimondo* Settlement Agreement Is Not At Issue In This Litigation</u>

Proposed Intervenors expressly rely on their purported "contractual rights" under the settlement agreement in *NRDC v. Raimondo*, No. 1:24-cv-00148 (Ct. Int'l Trade). *See* Mot. to Intervene at 14. They claim an interest in ensuring that the Federal Defendants comply with that settlement's requirement to "prohibit the importation of fish and fish products into the United States from all . . . fisheries for which NMFS has denied a comparability finding" by January 1, 2026. *Id*. at 19.

That argument fundamentally misapprehends the nature of this case. The settlement provides no basis for intervention because it does not address the legal questions presented in this case. The *Raimondo* settlement established a timeline for NMFS to act; it did not prescribe the legal standards, interpretive approach, or evidentiary methodology NMFS was required to apply in conducting comparability assessments. The subject of this litigation is whether NMFS's regulatory framework and interpretive approach comply with the MMPA..

Whether NMFS's methodology is lawful under the MMPA has no bearing on, and does not implicate, the terms of the *Raimondo* settlement. If Proposed Intervenors believe NMFS has failed to comply with that settlement, the proper forum for enforcement is the *Raimondo* case itself, where the Court retained jurisdiction. They may not invoke that settlement as a basis to intervene here, where the agreement is collateral to the issues before the Court.

b. <u>Interests in Future Litigation Are Too Speculative to Support Intervention</u>

Proposed Intervenors also assert an interest in preserving their ability to challenge certain positive comparability findings in future litigation they may file after January 1, 2026. *See* Mot. to Intervene at 18. They argue that this Court's decision in the present case could have "significant persuasive effects" on such future actions. *Id.* at 20 (citing *Stone v. First Union Corp.*, 371 F.3d 1305, 1310 (11th Cir. 2004)).

That contention fails under well-established precedent. Rule 24(a) requires that an intervenor's interests are direct, substantial, and legally protectable—not speculative or contingent on hypothetical future litigation. *See, e.g.*, *Cascade Nat. Gas Corp. v. El Paso Nat. Gas Co.*, 386 U.S. 129, 134 n.3 (1967); *Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc.*, 425 F.3d 1308, 1311 (11th Cir. 2005) (finding there is no interest for intervention when it's contingent on the outcome of another litigation); *Washington Elec. Co-op., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990) ("An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule."); *United States v. Peoples Benefit Life Ins. Co.*, 271 F.3d 411, 415 (2d Cir. 2001).

Proposed Intervenors have not filed any such future actions, and their claimed interest depends entirely on speculative downstream effects of potential judicial reasoning. Were such an attenuated interest sufficient, virtually any organization could intervene in any administrative law case merely because the Court's interpretation might influence later agency decisions. Rule 24(a) does not allow such limitless intervention.

  c. <u>Generalized Policy Interests Do Not Create a Concrete Interest</u>

  Proposed Intervenors further invoke an organizational interest in defending "import bans they have long worked to compel" through years of advocacy and litigation. Mot. to Intervene at 17. They rely on *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995), for the proposition that a public-interest group may intervene as of right to defend a regulation it has supported. *Id.* That reliance is misplaced.

  Rule 24(a) requires a significantly protectable interest—one that is direct, substantial, and legally cognizable—not a general policy preference. *Cascade Nat. Gas Corp.*, 386 U.S. at 134 n.3. Proposed Intervenors' longstanding advocacy for stricter marine mammal protections reflects a policy position, not a legal interest in the validity of the specific determinations challenged here.

  Moreover, *Idaho Farm Bureau* involved conservation groups defending an Endangered Species Act listing they directly petitioned for—a concrete regulatory action they helped initiate. *Idaho Farm Bureau*, 58 F.3d at 1397. This case is materially different. Proposed Intervenors do not claim they petitioned for or participated in NMFS's adoption of the regulatory framework or analytical methodology challenged here. They now seek to defend the legality of thousands of determinations made pursuant to those rules—actions far removed from any protectable interest recognized under Rule 24.

  To the extent Proposed Intervenors claim their members have aesthetic, recreational, or scientific interests in marine mammals, those interests are already represented by the Federal Defendants, who are charged by statute with implementing and enforcing the MMPA. The adequacy of that representation is the relevant inquiry (addressed below in Section A.ii). Organizational or policy advocacy interests, standing alone, are insufficient to establish intervention as of right.

In sum, Proposed Intervenors have not demonstrated a direct, legally protectable interest "relating to the property or transaction that is the subject of the action." Their asserted bases—settlement enforcement, speculative future litigation, and generalized policy advocacy—are collateral to this case. The issues here concern the legality of NMFS's regulatory framework and analytical methodology, not the enforcement of separate agreements or the advancement of policy goals. Accordingly, intervention as of right should be denied.

### ii.     Proposed Intervenors Are Adequately Represented

Proposed Intervenors contend that the Federal Defendants will not adequately represent their interests, asserting three arguments: (1) that the Supreme Court's decision in *Berger v. North Carolina State Conference of the NAACP* undermines any presumption of adequate government representation, Mot. to Intervene at 21–22; (2) that Federal Defendants purportedly balance broader considerations—such as "international trade policy, economic impacts, and practicality considerations"—that diverge from Proposed Intervenors' focus on marine mammal protection, *id.* at 23; and (3) that their past adversarial history with the agency, and NMFS's reservation of authority to reconsider future determinations, show inadequate representation, *id.* at 24.

Each argument fails.

a.  <u>The Presumption of Adequate Representation Applies and Has Not Been Overcome</u>

The presumption of adequate representation is strongest where, as here, the government is defending its own regulatory action. *See South Carolina*, 558 U.S. at 275; *State of New Jersey v. State of New York*, 345 U.S. 369, 371 (1953) (explaining that a movant must show a compelling interests distinct from that of the sovereign).

Proposed Intervenors' reliance on *Berger* is also misplaced. Mot. to Intervene at 21. *Berger* did not abolish the adequacy presumptions in all cases; it held only that such presumption cannot

9

bar a state-authorized officer from intervening to defend state law. *Berger v. North Carolina State Conference of the NAACP*, 597 U.S. 179, 188–89, 197–98 (2022). The court expressly declined to decide "whether a presumption of adequate representation might sometimes be appropriate when a private litigant seeks to defend a law alongside the government." *Id*. at 197. Thus, *Berger* reinforces, rather than displaces, the settled rule that private entities face a presumption of adequate representation when a governmental party is already defending the challenged action. Mot. to Intervene at 21.

That presumption squarely applies here. The Federal Defendants are defending the validity of their own September 2025 comparability determinations. Courts routinely find representation adequate where the government and proposed intervenor share the same ultimate objective. *See South Carolina*, 558 U.S. at 268–71 (finding sovereign adequately represents movants on uniquely sovereign issues); *State of New Jersey*, 345 U.S. at 373–74 (requiring compelling, distinct interest).

Proposed Intervenors identify no distinct or conflicting interest that the agency will forego in Proposed Intervenors' absence from the case before the Court. Their claim of "deep knowledge" or unique expertise, without more, cannot substitute for evidence or argument that Federal Defendants will omit—but that Proposed Intervenors will supply. Differences in emphasis, strategy, or policy preference do not rebut adequacy. Because Proposed Intervenors have not shown a "compelling interest" that diverges from the government's, their request for intervention fails.

    b. <u>Federal Defendants Have Every Incentive to Vigorously Defend These Determinations</u>

Federal Defendants have strong institutional incentives to defend the determinations they issued. Although Plaintiffs disagree, these determinations represent the results of the agency's exercise and statutory mandate under the MMPA. Federal Defendants possess the administrative

record, developed the analytical framework challenged here, and are positioned to present the legal and factual basis for the agency's determinations. *See South Carolina*, 558 U.S. at 275 (presumption of adequate representation applies when government defends its own action).

Proposed Intervenors' claim that the agency must consider "international trade policy, economic impacts, and practicality considerations," Mot. to Intervene at 23, does not establish inadequacy—it underscores that NMFS is properly executing its statutory mandate. The MMPA expressly requires consideration of both conservation and the practical realities of international commerce. *See, e.g.*, 50 C.F.R. § 216.24(h). The fact that NMFS balances these statutory objectives demonstrates competent representation, not a conflict of interest.

Past policy disagreements between the parties are immaterial to the legal questions raised here. Federal Defendants and Proposed Intervenor share the same ultimate objective in this litigation: upholding the September 2025 comparability findings and import prohibits as lawful under the MMPA. Where the government and proposed intervenor seek the same outcome in defending agency action, a strong presumption of adequate representation applies. Proposed Intervenors have not overcome that presumption.

c. <u>Prior Litigation and Reserved Rights Do Not Show Inadequate Representation</u>

Proposed Intervenors' reliance on their prior adversarial relationship with NMFS, and on the agency's reservation of authority to reconsider determinations under 50 C.F.R. § 216.24(h)(8)(vii) is misplaced.

First, the fact that Proposed Intervenors once sued to compel action does not mean the agency will now abandon its own determinations. To the contrary, agencies that act pursuant to settlement agreements have heightened incentives to defend those actions, having devoted extensive resources to compliance.

11

Second, the reservation clause cited by the Proposed Intervenors is routine and legally required. It simply reflects NMFS's continued duty to comply with its regulations and future court orders. Recognizing an agency's authority to reconsider does not suggest it will refuse to defend its existing decisions.

Finally, the Federal Defendants' defense of their own marine mammal protection determinations fully encompass the interests Proposed Intervenors assert. Because Proposed Intervenors and the Federal Defendants seek the same outcome and rely on the same legal framework, there is no basis to conclude that representation will be inadequate. The strong presumption of adequacy applies, and Proposed Intervenors have not overcome it. Their motion should be denied on this ground alone.

### B. The Court Should Deny Permissive Intervention

The Court should also deny the Proposed Intervenors' alternative request for permissive intervention under USCIT Rule 24(b). While there may be overlap on questions of law, other Rule 24(b) factors like undue delay and prejudice weigh decisively against intervention. *See Manuli Autoadesivi, S.p.A. v. United States*, 602 F. Supp. 96, 98 (Ct. Int'l Trade 1985) (explaining the "most significant factor that militates against allowing intervention in this case is the likelihood of prejudice to the original parties"). Allowing intervention here would delay resolution of Plaintiffs' preliminary injunction motion and increase litigation burdens without adding any substantive benefit.

Proposed Intervenors have not identified distinct legal arguments or factual issues that the Government will not present. Proposed Intervenors' participation would largely duplicate the Federal Defendants' defense while complicating schedules, briefing, and case management. The prejudice to Plaintiffs substantially outweighs any considerations in favor of intervention.

### i. Intervention Would Cause Substantial and Irreparable Prejudice to Plaintiffs

This case is tethered to an immovable effective date: January 1, 2026. The prejudice from delay is immediate and irreparable, not curable by later money damages or schedule adjustments. *See* ECF No. 23 (Mot. for Expedited Hearing). Ocean transit from Southeast Asia takes 8–10 weeks; product ordered or shipped after mid-October 2025 risks arrival after January 1, 2026 and refusal of entry, with total loss of product and sunk costs. *See* 90 Fed. Reg. 42,395, 42,398.[1]

Plaintiffs therefore must make irreversible operational decisions now. As detailed in Plaintiffs' Motion for Preliminary Injunction Motion, Expedited Hearing Motion, and supporting declarations, Plaintiffs will have to begin domestic layoffs soon, are already curtailing orders, canceling contracts, and winding down operations to avoid millions of dollars in stranded inventory. Each day of delay in resolving the preliminary injunction motion directly translates into additional concrete harm that cannot be undone: customers will switch permanently; facilities will close; specialized worker will leave; capital will be liquidated; and supply relationships built over decades will collapse.

Adding three organizational parties at this stage would inevitably slow adjudication of the motion for preliminary injunction—affecting briefing schedules, page limits, coordination of aligned parties, and judicial review time. This prejudice is neither speculative nor manageable through case management orders. Where delay threatens Plaintiffs' survival, permissive intervention should be denied.

---

[1] As explained in our Complaint and Motion for Preliminary Injunction, this is a clear unlawful agency restriction and amendment to the regulations.

### ii. Proposed Intervenors Offer No Unique Arguments or Evidence

Permissive intervention is improper where the proposed intervenor offers no meaningful, non-duplicative contribution. Proposed Intervenors contend only that they "would ***likely*** make different arguments than those presented by the existing parties in this case" without providing requisite specificity. Mot. to Intervene at 29 (emphasis added). Proposed Intervenors' participation would add procedural complexity without substantive contribution.

This case is a classic record review of agency action. The issues are legal—statutory authority under 16 U.S.C. § 1371(a)(2), compliance with 50 C.F.R. § 216.24(h), APA arbitrariness, reliance interests, and alleged de facto amendments without notice and comment—and will be resolved on the administrative record NMFS compiles.

Proposed Intervenors cannot submit extra-record evidence; the Government controls and can fully present the record. Without a concrete showing of unique arguments, intervention adds process but not value. That contravenes USCIT Rule 1's command for the "just, speedy, and inexpensive determination of every action and proceeding." USCIT Rule 1; *Neo Solar Power Corp.*, 2016 WL 3390237, at *2 ("[A]dditional parties always add additional time, effort, and expense[.]"); *Crosby Steam Gage & Valve Co. v. Manning, Maxwell & Moore, Inc.*, 51 F. Supp. 972, 973 (D. Mass. 1943) (explaining even aligned intervenors generate extra motions, objections, and briefing).

### iii. Judicial Economy Weighs Strongly Against Intervention

Permitting intervention would also burden the Court and encourage copycat motions from other organizations asserting similar interests, diverting this emergency proceeding from its essential task: prompt resolution of Plaintiffs' preliminary injunction motion. Managing multiple aligned intervenors requires coordinating briefing, page limits, argument time, and ancillary

disputes—all especially ill-suited to preliminary injunction practice, which demands focus and speed. *See Manuli Autoadesivi*, 602 F. Supp. at 99 (additional parties delay ultimate resolution).

Granting intervention on the asserted, tenuous basis here—generalized conservation interests and involvement in the *Raimondo* settlement—would set a precedent inviting serial interventions in any challenge to MMPA comparability findings or other settlement-driven regulatory actions. That result would complicate record-review litigation with collateral issues and undercut Rule 1's mandate.

In sum, although there may be common legal questions, other Rule 24(b) factors weigh heavily against intervention. Plaintiffs face substantial, irreversible prejudice from delay; Proposed Intervenors offer no unique contribution beyond duplicating the Government's defense; and intervention would disserve judicial economy. The Court should exercise its discretion to deny permissive intervention.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request this Court deny Proposed Intervenors' Motion to Intervene because the prejudice to Plaintiffs and inherent delay substantially outweighs any considerations in favor of intervention.

Dated: October 29, 2025

Respectfully submitted,

/s/ Ashley Akers

Ashley Akers
Rafe Petersen
Andrew McAllister
Kamran Mohiuddin  (pending)
Maggie Pahl  (pending)
HOLLAND & KNIGHT LLP
800 17th Street N.W., Suite 1100
Washington, D.C. 20006
Tele: 202-441-5870

Ashley.Akers@hklaw.com  
Rafe.Petersen@hklaw.com  
Andrew.Mcallister@hklaw.com  
Kamran.Mohiuddin@hklaw.com  
Maggie.Pahl@hklaw.com  

*Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

I, Ashley Akers, hereby certify that this brief complies with the 7,000 word limitation of the United States Court of International Trade set forth in Standard Chambers Procedure § 2(B)(1) because this brief contains 3,634 words. In making this certification, I have relied upon the word count function of the Microsoft Word processing system used to prepare this brief.

/s/ Ashley Akers
Ashley Akers

*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Ashley Akers, one of the attorneys for Plaintiffs, certify that the foregoing document was filed electronically with the Court's Case Management/Electronic Case Filing (CM/ECF) system on October 29, 2025. The Court and/or Clerk of the Court may serve and give notice to counsel by CM/ECF electronic transmission.

<u>/s/ Ashley Akers</u>
Ashley Akers

*Attorney for Plaintiffs*