UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:     THE HONORABLE JOSEPH A. LAROSKI, JR., JUDGE

| | |
|---|---|
| NATIONAL FISHERIES INSTITUTE, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 1:25-cv-00223 |
| ) | |
| UNITED STATES, et al., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT'S OPPOSITION TO MOTION OF CENTER FOR BIOLOGICAL DIVERSITY, NATURAL RESOURCES DEFENSE COUNCIL, AND ANIMAL WELFARE INSTITUTE TO INTERVENE AS INTERVENOR-DEFENDANTS**

The United States respectfully submits this response in opposition to the Motion of Center for Biological Diversity, Natural Resources Defense Council, and Animal Welfare Institute to Intervene as Intervenor-Defendants (ECF No. 25) (Motion to Intervene).

On October 22, 2025, Center for Biological Diversity (the Center), Natural Resources Defense Council (NRDC), and Animal Welfare Institute (AWI and collectively with the Center and NRDC, Applicants) moved to intervene as defendants in this litigation. Because Applicants lack standing to intervene under Rule 24 of the Rules of this Court and because Applicants' proposed intervention would arguably violate its contractual obligations under the same settlement agreement Applicants identify as the basis for their purported right, the Court should deny the Motion to Intervene.

**BACKGOUND**

The Marine Mammal Protection Act (MMPA) requires Commerce to ban the importation of fish and fish products from foreign commercial fisheries that do not meet U.S. standards. 16 U.S.C. § 1371(a)(2). Under 16 U.S.C. § 1382, the Secretary of Commerce has promulgated

regulations to carry out the purpose of this import ban. The regulations require the Department of Commerce and its component agencies, National Oceanic and Atmospheric Administration (NOAA) and National Marine Fisheries Service (NMFS), to issue comparability findings for all foreign fisheries that export fish and fish products to the United States, consistent with the U.S. standards determination contemplated by § 1371(a)(2). 50 C.F.R. § 216.24(h); 81 Fed. Reg. 54,390, 54,405 (Aug. 15, 2016) (Final Import Rule). Under these regulations, such import bans do not apply during an exemption period that ends on December 31, 2025. 50 C.F.R. §§ 216.3, 216.24(h)(2)(ii).

In August 2024, NDRC filed a complaint in this Court, alleging the failure to implement bans of the fish and fish products described at 16 U.S.C. § 1371(a)(2) and § 1372(c)(3) constituted agency action unlawfully withheld or unreasonably delayed in violation of the Administrative Procedure Act and the MMPA. Complaint, *Natural Resources Def. Council, Inc. v. Raimondo*, Ct. Int'l Trade 24-00148 (Aug. 8, 2024), ECF No. 1. NRDC further alleged that the United States promulgated, without proper notice and comment, an extension of this exemption period. *Id*.

In January 2025, the parties stipulated to a dismissal of that case, according to the terms of a settlement agreement. In that agreement, the Secretary of Commerce, acting through NMFS, agreed to take specific actions, many of which are particularly relevant here:

*First*, on September 1, 2025, NMFS would "issue final comparability findings for all harvesting nations and submit such findings to the Federal Register for publication." Stipulated Settlement Agreement ¶ 1.c, *Natural Resources Def. Council, Inc. v. Raimondo*, Ct. Int'l Trade 24-00148 (Jan. 16, 2025), ECF 29 (Stipulated Settlement Agreement).

2

*Second*, on January 1, 2026, NMFS, in cooperation with the Secretaries of the Treasury and Homeland Security, would "identify and prohibit the importation of fish and fish products into the United States from all harvesting nations or fisheries for which NMFS has denied a comparability finding." *Id.* ¶ 1.d.

*Third*, the parties agreed that "[f]or avoidance of doubt, NMFS may reconsider a comparability finding in accordance with 50 C.F.R. § 216.24(h)(8)(vii), or comply with a court order enjoining the enforcement of a comparability finding, notwithstanding the obligations provided in this Agreement." *Id.* ¶ 3.

*Fourth*, prior to January 1, 2026, plaintiffs agreed they would not initiate any litigation challenging any individual comparability findings made under the Agreement. *Id.* ¶ 4.a.

*Fifth,* prior to January 1, 2026, plaintiffs agreed they would "not expressly encourage or intentionally provide financial or other material support to any other person for the purpose of supporting that person's pursuit or intended pursuit of litigation challenging any comparability finding issued in Phase 3, including advising on litigation strategy or providing information for the purpose of supporting such litigation against the United States, provided that nothing in this Paragraph 4 will preclude Plaintiffs from communicating with each other or with outside counsel for the purpose of initiating litigation on or after January 1, 2026." *Id.* ¶ 4.b.

The parties agreed that the Court would retain jurisdiction over the non-monetary portions of the agreement. *Id.* ¶ 7.

NMFS made its September findings according to the schedule, issuing a decision memorandum and also country-specific reports, including for Indonesia, the Philippines, Vietnam, and Sri Lanka. *See Implementation of Fish and Fish Product Import Provisions of the Marine Mammal Protection Act*, 90 Fed. Reg. 42,395 (Sept. 2, 2025).   In these country-specific

reports, NMFS denied a comparability finding for blue swimming crab pot/trap and gillnet fisheries. Plaintiffs in this case, trade associations and seafood companies, filed their complaint and Applicants filed a motion to intervene.

## ARGUMENT

### I. Standard of Review

A putative defendant-intervenor must demonstrate Article III standing. *See California Steel Indus., Inc. v. United States*, 48 F.4th 1336, 1343 (citation omitted). A party can accomplish this by either demonstrating independent constitutional standing or so-called "piggyback" standing. *See N. Am. Interpipe Inc. v. United States*, 519 F. Supp. 3d 1313, 1321-22. Independent Article III standing requires (1) an injury in fact that is concrete and particularized; (2) a causal connection between injury and the conduct complained of; (3) a likelihood that the injury will be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992). Piggyback standing requires a showing that the relief sought is the same as an existing party in the case, in this case, the defendant's. *See California Steel*, 48 F. 4th at 1340.

### II. Applicants Lack Constitutional Standing to Intervene as a Right Because Their Alleged Injuries Will Not Be Affected by the Direct Legal Operation of the Judgment

On behalf of their members, Applicants assert aesthetic, recreational, scientific, and other interests in marine mammal species. Motion to Intervene at 8-10, 12. But Applicants' own Motion acknowledges that such interests are not directly affected by a ruling from this Court. Rather, Applicants argue that "[s]imilar import bans have been shown to compel responses from foreign governments that reduce bycatch dangers to marine mammals." *Id.* at 13. Notwithstanding Applicants' use of the verb "compel," import bans do nothing of the sort. At best, an import ban creates economic, political, or other pressure on a foreign sovereign to take

4

action to reduce marine mammal bycatch. Certainly, that is the intended goal of the MMPA, and that such bans have successfully obtained increased protections for marine mammal species is laudable. But neither this Court nor the Government Defendants can "compel" such actions from foreign nations, even assuming that those nations could or would take action to sufficiently protect Applicants' asserted interests here.

This disconnect is insufficient to confer Article III standing. *See, e.g.*, *Lujan*, 504 U.S. at 562 (holding that much more is needed to demonstrate that redressability of an alleged injury is not speculative when "a plaintiff's asserted injury arises from the [G]overnment's allegedly unlawful regulation (or lack of regulation) of *someone else*" than when the plaintiff is the intended object of the Government's action). And it is insufficient to meet the standard for intervention as a right. *See, e.g.*, *Am. Marine Time Trans., Inc. v. United States*, 870 F.2d 1559, 1561 (Fed. Cir. 1989) ("Intervention is proper only to protect those interests which are 'of such a *direct and immediate* character that the intervenor will either gain or lose by the *direct* legal operation and effect of the judgment.' The interest thus may not be either indirect or contingent.") (internal citation omitted).

Although Applicants cite the history of MMPA litigation they have brought against the United States over the last ten years, the history of related litigation actually undermines their own arguments. In 2018, Applicants successfully sought and obtained a Court-ordered import ban under the MMPA on certain fish and fish products from Mexico—over the objections of the Government—based on their asserted recreational and other interests in the vaquita, an endangered porpoise species on the verge of extinction. *Natural Res. Def. Council v. Ross*, 331 F. Supp. 3d 1338, 1359 (Ct. Int'l Trade 2018). An import ban was later imposed directly by the Government. *See Implementation of Fish and Fish Product Import Provisions of the Marine*

5

*Mammal Protection Act-Notification of Revocation of Comparability Findings and Implementation of Import Restrictions; Certification of Admissibility for Certain Fish Products From Mexico*, 85 Fed. Reg. 13,626, 13,627-28 (Dep't Commerce Mar. 9, 2020).  Yet the ban imposed under the MMPA did not adequately ameliorate the dangers faced by the vaquita according to these same Applicants.  Applicants again sued the Government (under a separate statute) *four years later*, arguing that the previously-obtained embargo was insufficient and that "a broader embargo . . . is needed to pressure Mexico to fully enforce those regulations" passed in 2020 following the MMPA ban.  *See* Complaint at ¶ 23, *Ctr. for Biological Diversity v. Haaland*, Ct. Int'l Trade No. 1:22-cv-00339 (Dec. 14, 2022), ECF No. 4.

Accordingly, to redress Applicants' asserted injuries, a series of events that could, but will not necessarily, occur must take place.  First, NMFS must deny a comparability finding to relevant fisheries that have a negative impact on the marine mammals in which Applicants' members assert an interest (as NMFS has already done with respect to fisheries expected to be subject to an import ban on January 1, 2026).  Second, independent foreign sovereigns must take certain unspecified steps to increase protection of marine mammals in those fisheries subject to a ban, presumably through increased regulations.  Third, fishers operating in those fisheries must adequately obey the regulations, either on their own or through increased enforcement actions brought by the applicable foreign sovereigns.  Fourth, the modified fishing practices must have an actual and appreciable effect on the vulnerable marine mammal species. Such a daisy-chain of events might happen.  But one or more might not occur for any number of reasons.  That is simply insufficient to confer standing.

What is more, the foreign governments could decline to take increased regulatory action because its fishers have sufficient markets for their products domestically or by exporting to

6

other nations. The foreign government could take retaliatory trade measures, such as bans or tariffs on U.S. products, in an attempt to pressure the United States to lift the embargo on the affected products. The foreign governments could undertake every conceivable policy initiative to protect vulnerable marine mammal species but still be unsuccessful. The foreign governments could succeed in eradicating all commercial fishing practices to which Applicants object, but vulnerable marine mammal species fail to recover due to other dangers outside of commercial fishing practices, like illegal poaching. Applicants' interest in this litigation is thus "indirect, because no consequence to [them] flows immediately from a [ruling by this Court], and contingent because of the uncertainty that other events will actually follow." *Am. Marine Time Trans.*, 870 F.2d at 1561. Their Motion to Intervene as a right should therefore be denied.

### III. Applicants Lack Standing Based on Their Contractual Rights

Applicants assert in the alternative that their interest in protecting their rights under the terms of the Stipulated Settlement Agreement provides a basis for intervention, arguing that "[a] ruling for Plaintiffs would eliminate the bargained-for benefits" under the agreement. Motion to Intervene at 14. But Applicants have obtained precisely what they bargained for. . The Stipulated Settlement Agreement resolved a complaint brought by Applicants alleging that the failure to implement import bans on fish and fish products harvested with commercial fishing technology that results in incidental take of marine mammals in excess of U.S. standards constituted agency action unlawfully withheld or unreasonably delayed in violation of the Administrative Procedure Act. Stipulated Settlement Agreement at 2. The Stipulated Settlement Agreement acknowledged that the determination of whether take from commercial fishing technologies exceeds U.S. standards is made through the grant or denial of a comparability finding pursuant to the applicable regulations. *Id. See also* 50 C.F.R. § 216.24(h); 16 U.S.C. §§ 1371(a)(2), 1372(c)(3), 1382.

Accordingly, under the terms of the Stipulated Settlement Agreement, the Government agreed to issue comparability findings for all harvesting nations on or before September 1, 2025 (identified as Phase 3). Stipulated Settlement Agreement ¶ 1.c. The Government did so. In addition, as required by the stipulated settlement and following certain interactions with harvesting nations required by the regulations, the Government notified "all harvesting nations or fisheries for which NMFS has denied a comparability finding" with associated import bans scheduled to begin on January 1, 2026. *See* Stipulated Settlement Agreement ¶ 1.a-d. Importantly, the Stipulated Settlement Agreement did not oblige the Government to reach any particular substantive result in its comparability findings. *Cf. id.* ¶ 4.c (explicitly reserving Applicants' right to challenge comparability findings issued in Phase 3 after December 31, 2025).

The Stipulated Settlement Agreement further contemplated that third parties might challenge the results of the comparability findings. It therefore included a provision that "[f]or avoidance of doubt, NMFS may reconsider a comparability finding in accordance with 50 C.F.R. § 216.24(h)(8)(vii), or comply with a court order enjoining the enforcement of a comparability finding, notwithstanding the obligations provided in this Agreement." *Id.* ¶ 3. And to the extent that NRDC might challenge a finding, it agreed not to do so before January 1, 2026. *Id.* ¶ 4.a. Applicants now insist that the possibility explicitly identified in the Stipulated Settlement Agreement—that this Court could order relief enjoining enforcement of one or more of the Government's previously-issued comparability findings—is somehow contrary to the benefits it was promised under that same agreement. Motion to Intervene at 14. *See also id.* at 24 (acknowledging that the Government "expressly reserved the right to reconsider the September comparability findings . . . raising the very real possibility that Federal Defendants may not

vigorously defend the comparability findings"). But Plaintiffs expressly agreed to this possibility through the inclusion of the "[f]or avoidance of doubt" language. They cannot have it both ways. Despite this previous concession, Applicants now seem to object to the notion that any other party might have interests in the continued importation of fish or fish products into the United States or that new information may come to light that would warrant review by NMFS. Applicants' alleged interests in preventing importation do not supersede their previous contractual commitments.

Because the Government has met its obligations under the Stipulated Settlement Agreement and any order from this Court enjoining actions in connection with a comparability finding is specifically permitted, Applicants do not have standing to intervene in order to protect their contractual interests.

### IV. Applicants Lack Piggyback Standing to Intervene as Defendants

Applicants assert that they are entitled to "piggyback" standing because they seek the same relief as the Government, but take inconsistent positions throughout their motion. Motion to Intervene at 11-12. Applicants assert that they intend to challenge "certain *positive* comparability findings" that are also challenged by the plaintiffs in this action. Motion to Intervene at 18. Although Applicants might disagree with plaintiffs' bases for seeking vacatur of such positive comparability findings, Applicants clearly would agree with the requested relief to vacate them—particularly because vacatur of positive findings would likely result in an immediate or near-immediate ban on imports of affected products. Accordingly, Applicants would *not* presumably seek the same relief as the Government with respect to those comparability findings.

Applicants' piggyback standing argument also suggests that their participation in this action could be in tension with their own obligations under the Stipulated Settlement Agreement.

9

Applicants agreed not to "provide financial or other material support to any other person for the purpose of supporting that person's pursuit or intended pursuit of litigation challenging any comparability finding." Stipulated Settlement Agreement ¶ 4.b. To the extent that Applicants' participation in this action would support plaintiffs' efforts to vacate the positive comparability findings Applicants themselves have indicated they intend to challenge, then their participation appears to run afoul of their covenant not to sue.

Further, to the extent that the Motion to Intervene constitutes an effort to enforce Applicants' rights and obligations under the Agreement, the Government is entitled to a 30-day period to meet and confer with Applicants in order "to attempt to resolve any disagreements without Court intervention." Stipulated Settlement Agreement ¶ 8.

For these same reasons, the Court should not accept Applicants' arguments that they may intervene permissively. Applicants assert that they "share common questions of both law (the requirements of the Import Provisions and the MMPA Regulations) and fact (the challenged comparability findings and the evidentiary support for them) with those of the existing parties." Motion to Intervene at 28. But Applicants elsewhere admit that their "arguments diverge from Federal Defendants' when it comes to many of the MMPA Import Provisions at the center of this suit." *Id.* at 25. And Applicants likewise concede they disagree with both parties with respect to the factual bases undergirding at least some of the comparability findings at issue in this action. *Id.* at 28-29 ("[Applicants] disagree with most, but not all, of Plaintiffs' interpretations, and with some, but not all of Federal Defendants' interpretations.").

Even were these sufficient bases to determine that Applicants' purported defenses—which are not clearly identified—shared common questions, Applicants have not demonstrated that their members' aesthetic, recreational, scientific or other interests in marine mammals, or

their own contractual interests, would be adversely affected by a judgment favorable to the plaintiffs. *See, e.g.*, *Ereğli Demir Ve Çelik Fabrikalari T.A.Ş. v. U.S. Int'l Trade Comm'n*, 639 F. Supp. 6d 1245, 1259 (Ct. Int'l Trade 2023) (denying motion for permissive intervention for failure to demonstrate that applicant would be adversely affected or aggrieved by a decision on the merits).

Applicants assert in a wholly conclusory fashion that the action brought by plaintiffs, "if successful, would impair the interests of [Applicants] and their members." Motion to Intervene at 27. As demonstrated above, nothing in the instant litigation undermines the bargain struck by Applicants and the Government in the Stipulated Settlement Agreement as Applicants were never entitled to particular substantive comparability outcomes under that agreement and the Government reserved its right to comply with court orders as the law requires. To the extent that Applicants assert that import bans are necessary to protect the interests of their members, this position is wholly speculative. *See Lujan*, 504 U.S. at 561. Besides, should the Court enjoin an anticipated import ban in order for NMFS to reconsider its denial of a comparability finding, Applicants (assuming they could establish Article III standing) could substantively challenge that determination with this Court if NMFS reverses its prior decision and issues an affirmative comparability finding. If NMFS again determines that the denial of the comparability finding is appropriate, then an import ban will necessarily follow under the terms of the statute and there is no impairment of Applicants' asserted interests.

## CONCLUSION

For these reasons, we respectfully request that the Court deny Applicants' Motion to Intervene.

11

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | BRETT A. SHUMATE<br>Assistant Attorney General |
|  | PATRICIA M. McCARTHY<br>Director |
|  | /s/ Claudia Burke<br>CLAUDIA BURKE<br>Deputy Director |
|  | /s/ Catherine M. Yang by /s/ Claudia Burke<br>CATHERINE M. YANG<br>BLAKE W. COWMAN<br>Trial Attorneys<br>Commercial Litigation Branch<br>Civil Division, U.S. Department of Justice<br>P.O. Box 480<br>Ben Franklin Station<br>Washington, D.C. 20044<br>Telephone: (202) 514-4336<br>Email: catherine.m.yang@usdoj.gov |
| October 29, 2025 | Attorneys for Defendant |

## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this filing contains 3126 words, as calculated by the word processing system used to prepare this brief (Microsoft Word).

/s/ Claudia Burke
CLAUDIA BURKE
