# EXHIBIT 3



November 9, 2015

Mr. John Henderschedt
Director, Office of International Affairs
Attn: MMPA Fish Import Provisions
NMFS, F/IA
1315 East-West Highway
Silver Spring, MD  20910

                  Submitted electronically at www.regulations.gov

  RE:  Docket No. NOAA-NMFS-2010-0098; Fish and Fish Product Import Provisions of the
        Marine Mammal Protection Act; 80 *Federal Register* 48172, August 11, 2015

Dear Mr. Henderschedt,

On behalf of the members of the National Fisheries Institute (NFI), this letter is in response to the *Federal Register* notice referenced above regarding the proposed rulemaking to implement the fish and fish product import provisions of the Marine Mammal Protection Act (MMPA).

For more than 60 years, NFI has been the nation's leading advocacy organization for the seafood industry.  Its member companies represent every element of the industry ranging from harvesters, processors, and importers, to distribution, retail and food service operations.   The seafood industry is a global industry; over ninety percent of the seafood consumed in the United States is imported from countries all around the world.  NFI importers, producers, processors and fishermen work hard to ensure the use of practices that promote the sustainability, quality and, most importantly, safety of their products.  Provisions of this proposed rule, once finalized and implemented will directly impact our members who rely on foreign-sourced seafood.

We respect the enormous task that the National Marine Fisheries Service (NMFS) is undertaking to develop and implement regulations to meet the import provision of the MMPA and provide comments to facilitate this statutorily-mandated undertaking to evaluate global programs that reduce the incidental mortality and serious injury of marine mammals due to commercial fishing.

**Comments Regarding the Scope of the Proposed Regulation**

We understand the obligation of NMFS to implement Section 101 (a)(2) of the MMPA which in part states –
        [t]he Secretary of the Treasury shall ban the importation of commercial fish or
        products from fish which have been caught with commercial fishing technology

Case 1:25-cv-00223-JAL    Document 38-3    Filed 10/30/25    Page 3 of 6

NFI Comments Fish and Fish Product Import Provisions of the MMPA | Docket No. NOAA-NMFS-2010-0098
November 9, 2015
Page 2

> which results in the incidental kill or incidental serious injury of ocean mammals in excess of United States standards. For purposes of applying the preceding sentence, the Secretary [of Commerce] shall insist on reasonable proof from the government of any nation from which fish or fish products will be exported to the United States of the effects on ocean mammals of the commercial fishing technology in use for such fish or fish products exported from such nation to the United States. (16 USC § 1371(a)(2))

We encourage NMFS to take care to finalize a regulation that does not go beyond the measure of reasonable proof as required in Section 101(a)(2) of the MMPA.

We noted with approval NMFS' proposed approach to "regulate in a fair, transparent, and non-discriminatory manner, and to regulate based on the best available science." (80 FR at 48187) Any deviation from these principles could have the potential to violate the U.S. obligations to the WTO Agreement.

In a similar vein, we noted that when determining or reconsidering comparability, NMFS will depend mainly on documentary evidence provided by the harvesting nation (80 FR at 48178) but will also utilize information from others sources if necessary. In particular we are concerned that NMFS could potentially rely on information provided by nongovernmental organizations and the public. (80 FR at 48183). We caution NMFS to ensure that information provided by nongovernment organizations and public sources is substantiated and credible if utilized to support a "non-comparability finding." It appears that NMFS recognizes this concern with the statement "…decisions under this rule must comply with the Administrative Procedure Act … prohibiting arbitrary and capricious decisionmaking." (80 FR at 48178).

We support the determination by NMFS that Section 101(a)(2) of the MMPA only pertains to incidental serious injury and mortality to marine mammals from commercial fishing operations that export the fish product to the United States. We agree with the determination by NMFS that a foreign nation's non-exporting fisheries or other sources of non-fishery human-caused incidental mortality and serious injury of marine mammals would be outside the scope of this regulatory obligation. (80 FR at 48174). In such, data from those fisheries or actions must not be considered when denying a comparability finding of a related fishery.

We note that the proposed regulations (50 CFR §216.24(h)(3)(i)(A)) define a commercial fishing operation to include aquaculture activities that interact with or occur in marine mammal habitat. With that definition we deduce that the proposed regulations do not apply in any manner to non-marine aquaculture operations, but we could be incorrect. The final rule should clearly state the commercial aquaculture operations that would not be impacted at any level by the final rule, and therefore would not be included in the List of Foreign Fisheries and would not require a comparability assessment to continue exportation to the U.S.

Finally we support the exclusion of highly processed fish products such as fish oil, slurry, sauces, sticks, balls, cakes and pudding that cannot be tracked back to one species of fish or a specific commercial fishing operation from the proposed definition of fish and fish products. (80 FR at 48174).

**Comments Regarding the Implementation of the Final Regulation**

As we understand from our review of the proposed rule, NMFS will undertake the following process once a final rule is effective.

- A one-time only five-year exemption period starts with the effective date of the final rule to allow harvesting nations time to develop regulatory programs that will comply with requirements necessary to achieve comparability findings.
- Preliminarily classify as "exempt" or "export" all fisheries that are currently exporting to the U.S.
- Within one year of the effective date of the final rule:
    - Propose through a Federal Register notice a tentative List of Foreign Fisheries (LFF) including harvesting nations, their fisheries and their preliminary classifications.
    - Notify each harvesting nation and request information to be submitted within 90 days to support the preliminary classification.
    - Finalize through a Federal Register notice the final LFF.
- Consult with harvesting nations and provide information of the new regulatory requirements for exempt and export fisheries that would allow for continued importation by the U.S. Provide outreach and assistance as needed and as resources would allow.
- Two years prior to the end of the exemption period, harvesting nations submit reports outlining the progress of implementing provisions necessary to receive a comparability finding.
- One year before end of exemption period, NMFS will re-evaluate the classification of each foreign fishery and through Federal Register notices publish a draft and subsequent final LFF.
- By March 1 of the last year of the exemption period, harvesting nations exporting fish and fish products to the U.S. submit an application with supporting documentation for comparability finding.
- By November 30 of the final year of the exemption period, NMFS determines comparability findings for each fishery.
- Publish a Federal Register notice, effective 30 days after publication, which identifies import restrictions for fisheries that fail to receive a comparability finding.

NMFS is proposing that the comparability findings be effective for a four-year period. Two years into each subsequent four-year period, the requirements listed above for progress reports, applications for and determinations of comparability findings, draft and final LFF and identification of import restrictions will commence anew.

The reason for outlining the proposed timeline within our comments is two-fold. One is to ensure that we understand the process that is being proposed. And two, to demonstrate that this process will be very resource intensive for NMFS and all harvesting nations. We caution NMFS to ensure that resources are allocated to complete this extensive and cyclical process. In addition, we encourage continued outreach and collaboration with the harvesting nations.

NFI Comments Fish and Fish Product Import Provisions of the MMPA | Docket No. NOAA-NMFS-2010-0098
November 9, 2015
Page 4

As mentioned above, NMFS is proposing an initial five-year "exemption period" commencing with the effective date of the final rule. During this "exemption period" fish and fish products from harvesting nations with existing exports to the United States will be allowed to continue without import restrictions.

While we appreciate the recognition that time will be necessary for nations to develop regulatory programs and provide documentation to support a comparability determination, we question whether five years will be sufficient for the extensive undertaking outlined in the proposed rule. As stated in the Federal Register notice, over 120 nations collectively export more than 67 marine species to the United States (80 FR at 48189). Each nation cannot reasonably be expected to meet this timeline to develop and implement regulations similar to those in place in the United States, even with the flexibility allowed for in the proposed regulations. We encourage NMFS to promulgate provisions to allow for an extension of the five-year exemption period should it appear that this timeline proves to be too aggressive. It is essential for NMFS to recognize that flexibility in the timeline may be necessary to avoid a disruption in trade that could arise if foreign fisheries are declared not comparable simply because they or even NMFS could not fulfill all the provisions of a final regulation within a non-extendable timeline.

In this regard, NMFS has already recognized that some nations may need additional time. As stated in the Federal Register notice, the Assistant Administrator may specify a comparability finding period other than four years for a nation that would "benefit from additional time to demonstrate that its regulatory program is comparable in effectiveness". (80 FR at 48182). We are encouraged to see that NMFS acknowledges that some nations may need more than five years to demonstrate comparability, and consistent with that, we urge NMFS to include in the final rule flexibility to accommodate those nations.

Likewise we are concerned that for new fisheries from existing exporting nations and new nations that would not be part of the initial five-year exemption period, the proposed 12-month "provisional comparability period" may not be a sufficient timeframe to complete the proposed requirements for submitting the application and documenting evidence required to receive a comparability finding. In particular we note that the 12-month window would in fact be reduced to essentially 8 months due to the proposed deadline (i.e., "[a]t least 120 days prior to the expiration of the provisional comparability finding the harvesting nation must submit … the application and documentary evidence required to receive a comparability finding…"). (80 FR at 48183). These nations should be afforded the same five-year exemption period as proposed for nations currently exporting fish or fish products to the United States. We were not able to determine a justification for this difference.

### Comments Regarding the Proposed Progress Reports

NMFS is proposing to require that each harvesting nation submit a progress report two years prior to the end of the five-year exemption period and then every four years thereafter. (80 FR at 48185). We question the value of continued progress reports for nations that have been determined to have a comparable regulatory system, especially with the requirement to reapply and be reassessed every four years. Initially, progress reports may be valuable for both NMFS

Case 1:25-cv-00223-JAL    Document 38-3    Filed 10/30/25    Page 6 of 6

NFI Comments Fish and Fish Product Import Provisions of the MMPA | Docket No. NOAA-NMFS-2010-0098
November 9, 2015
Page 5

and the harvesting nations, but as regulatory programs mature it may not be necessary for progress reports to be required in perpetuity. We encourage NMFS to consider adding flexibility to this regulatory requirement to only require progress reports on an as needed basis to minimize the overall burden of this proposed regulation.

## Comments Regarding Impact on U.S. Entities and Regulatory Burden

NMFS states that "[n]o U.S. industrial sector is likely to be directly affected by [this] rulemaking." (80 FR at 48190). We question this assessment. While it is true that the burden of complying with the proposed regulation will be borne by NMFS and the foreign harvesting nations, the U.S. seafood supply chain relies heavily on having access to imported seafood. According to the economic analysis from the Department of Commerce, the seafood industry generates 1,270,141 jobs in the U.S., nearly 45 percent of these jobs are created by imported seafood. Any uncertainties to the availability of supply will impact pricing and could jeopardize jobs. The burden to the U.S. industry is difficult to estimate without having a sense of which, if any, of the over 120 nations would be successful in achieving a comparability finding and thus be allowed to continue to export fish and fish products to the U.S. In addition any resulting import prohibitions will be devastating to those U.S. businesses built around that particular supply. As such, import prohibitions should always be the very last option. Alternate procedures must be provided for in the final rule which could be utilized by the harvesting nation to ensure that specific shipments were not harvested in a manner that caused the incidental kill or incidental serious injury of ocean mammals in excess of U.S. standards. This would lessen the burden of import prohibitions while still achieving the desired protection of marine mammals.

## Conclusion

Thank you for the opportunity to comment on this rulemaking. We urge NMFS to carefully and thoughtfully implement the final rule paying particular attention to international trade requirements as they apply to the affected industries. We encourage continued outreach and collaboration with the impacted harvesting nations.

Sincerely,

*Lisa M Weddig*

Lisa M. Weddig
Vice President, Regulatory and Technical Affairs
National Fisheries Institute